Vincent P. Slusher
State Bar No. 00785480
vince.slusher@dlapiper.com
J. Seth Moore
State Bar No. 24027522
seth.moore@dlapiper.com
DLA Piper LLP (US)
1717 Main Street, Suite 4600
Dallas, Texas 75201
Telephone:   (214) 743-4572
Facsimile:    (972) 813-6267

PROPOSED COUNSEL FOR DEBTOR AND
DEBTOR-IN POSSESSION

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 09-34484 |
| | § | |
| PRO-HEALTH LLC | § | CHAPTER 11 |
| | § | |
| | § | |
| DEBTOR. | § | |

**MOTION OF DEBTOR FOR ORDER AUTHORIZING
PROCEDURES FOR FILING AND PAYMENT OF CLAIMS UNDER PACA**

**A HEARING WILL BE CONDUCTED ON THIS MATTER ON SEPTEMBER 29, 2009 AT 9:15 A.M. IN ROOM 1424 (COURTROOM #2) EARL CABELL FEDERAL BUILDING, 1100 COMMERCE STREET, DALLAS, TEXAS 75242. IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING, SPECIFICALLY ANSWERING EACH PARAGRAPH OF THIS PLEADING. UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE WITH THE CLERK OF THE BANKRUPTCY COURT WITHIN TWENTY DAYS FROM THE DATE YOU WERE SERVED WITH THIS PLEADING. YOU MUST SERVE A COPY OF YOUR RESPONSE ON THE PERSON WHO SENT YOU THE NOTICE; OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED**

The above-captioned debtor and debtor-in-possession (the "Debtor") hereby moves this Court for the entry of an order implementing procedures for the filing of claims under the Perishable

Agriculture Commodities Act of 1930, as amended, 7 U.S.C. §§ 499(a), *et seq.* ("PACA"), authorizing (but not directing) payment of PACA claims the Debtor has no objection to, and implementing a procedure for the expedited determination of PACA claims disputed by the Debtor. In support of this Motion, the Debtors respectfully state as follows:

## I. PROCEDURAL BACKGROUND

**A.    The Bankruptcy Cases**

1.    On July 9, 2009 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code"). The Debtor is operating its business and managing its properties as debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Debtor bankruptcy cases. On July 21, 2009, the United States Trustee appointed an Official Committee of Unsecured Creditors.

**B.    Jurisdiction**

2.    The Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of this proceeding and this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

3.    The statutory bases for the relief requested herein are sections 105 and 541 of the Bankruptcy Code and PACA.

## II. COMPANY BACKGROUND

4.    The Debtor was formed in 2005 as an Idaho limited liability company. At the time of its formation, the Debtor owned and operated a potato processing facility in Wray, Colorado and owned several thousand acres of farm land in Dundy County, Nebraska. The Debtor actively engaged in farming operations on the Dundy County property growing potatoes

as a cash crop. These potatoes, along with potatoes grown by other "grower partners" of the Debtor were processed by the Debtor at the Wray plant and sold to third parties.

5. Wray, Colorado is small town located in Yuma County, Colorado. Wray is located near the Colorado-Nebraska border and is geographically adjacent to Dundy County, Nebraska. As of the most recent census, Wray Colorado's population hovered around 2,000 inhabitants. The Debtor, in its potato processing facility, employs 140 people in Wray. In fact the Debtor is the largest employer in Wray and Yuma County.

6. In 2007, the Debtor decided to expand its operations into the state of Texas. The Debtor leased an approximately 125,000 square foot facility in Carrolton, Texas and proceeded to construct a state of the art potato processing facility here in North Texas. In addition to the plant, the Debtor leased thousands of acres of farm land in the Texas panhandle and began growing Texas potatoes. In addition to its own leased acreage, the Debtor also engaged several grower partners in Texas, and through contractual arrangements, obtained these grower partners' potatoes and sold them through the Debtor's distribution channel as Pro-Health potatoes. The Debtor sells its potatoes to customers including Central Market, HEB, Kroger, Safeway and other similar retailers. The Debtor recently entered into agreements to provide potatoes to Wal-Mart through its distribution centers.

7. Since relocating the Debtor's principle place of business to Texas in 2007 and commencing operation here in Texas, the Debtor has become the largest grower/processor of potatoes in the state of Texas. The Debtor employs approximately 70 people in its processing and farming operations in Texas.

8. The Debtor funded the expansion of its business operations through equity infusions and a series of loans from New Frontier Bank ("NFB") in Greely, Colorado. The

proceeds of these of loans were invested by the Debtor for modernization of the Wray facility and the Dundy County farming operation and the design and construction of the processing facility in Carrolton. The Debtor, from its inception of operations had a healthy, responsible relationship with NFB. Payments were made timely. As loans matured they were paid off or renewed and the business of the Debtor grew and expanded profitably. All payments were made timely and pursuant to the terms of the various agreements between the Debtor and NFB.

9. The Debtor operates on a 13 "four week" period fiscal year that ends on the Saturday closest to June 30th of each year. Because there are 364 days in a 13 "four week"" period versus the 365 days and 366 days in leap years, every sixth year will have 53 weeks with the extra period accounted for in period 1 of that year. This accounting fiscal year is referred to as a 52/53 week year. In the Debtor's 2006 fiscal year (which ended in June 07) revenues from its farm business operations were $28,660,287. In fiscal year 2007 (which ended in June 08) revenues from farm business operations grew to $44,4000,065. For fiscal year 2008 which ended June 27, 2009, we have only partial information available until the company is able to close out its end of year accounting. Through May 2, 2009, the Debtor's farm business revenues were $41,970,698. It is likely that Pro-Health's farm business revenues for 2008 will exceed $50,000,000.00. The Debtor processed and sold 71,279,100 pounds of potatoes at its Carrolton Plant in 2008. During that same period, the Debtor processed and sold 136,542,700 pounds of potatoes at its Wray Colorado facility.

### III. RELIEF REQUESTED

10. By this Motion, the Debtor seeks approval of procedures for the filing of claims arising under PACA (the "PACA Claims"), the authority to pay PACA Claims that the Debtor believes to

WEST\21786559.1

represent valid PACA Claims, and approval of a procedure pursuant to which this court can determine the validity of PACA claims which the Debtor believes to be disputed.

## IV. BASIS FOR RELIEF

11. PACA provides certain protections to sellers of perishable agricultural commodities (a "PACA Claimant"):

> Although PACA as first enacted provided some protection for sellers of fresh produce, in 1984 Congress determined that greater protection was warranted. ... Due to a large number of defaults by the purchasers, and the seller's status as unsecured creditors, the sellers recover, if at all, only after banks and other lenders who have obtained security interests in the defaulting purchaser's inventories, proceeds and receivables, [citations omitted.] In order to redress this imbalance, Congress added Section 499e(c) to PACA, Pub. L. No. 98-273, 98 Stat. 165 (1984), which impresses a trust in favor of the sellers on the inventories of commodities, the products derived therefrom, and the proceeds of sale of such commodities and products. H.R. Rep. No. 543, *reprinted in* 1984 U.S.C.C.A.N. at 407.

Endico Potatoes. Inc. v. CIT Group/Factoring, Inc., 67 F.3d 1063, 1067 (3d Cir. 1995); see also Consumers Produce Co. v. Volante Wholesale Produce. Inc., 16 F.3d 1374, 1379 (3d Cir. 1994). Under PACA, a buyer's produce, products derived from that produce, and proceeds derived therefrom, are held in a floating non-segregated trust for the benefit of PACA Claimants who have met the applicable statutory requirements (a "PACA Trust"). 7 U.S.C. § 499e(c); 7 C.F.R. § 46.46(b); Idahoan Fresh v. Advantage Produce. Inc., 157 F.3d 197, 199 (3d Cir. 1998) ("a buyer's produce, products derived from that produce, and the proceeds gained therefrom are held in a non-segregated, floating trust for the benefit of unpaid suppliers who have met the applicable statutory requirements"). Thus, the provision affords PACA Claimants the right to be paid by the buyer before all other creditors of the buyer, including secured creditors, with the exception of good faith purchasers for value. Tom Lange Co. v. Kornblum & Co. (In re Kornblum & Co.), 81 F.3d 280, 284 (2d Cir. 1996) ("a PACA trust beneficiary is thereby entitled to claim trust property ahead of even

creditors holding security interests in the property"); Endico Potatoes, Inc. 67 F.3d at 1067 ("Through this trust, the sellers of the commodities maintain a right to recover against the purchasers superior to all creditors, including secured creditors."); Consumers Produce Co.. 16 F.3d at 1379 ('third-party transferees may retain PACA trust assets without liability to trust beneficiaries if they are bona fide purchasers for value"); see also Middle Mountain Land & Produce. Inc. v. Sound Commodities. Inc.. 307 F.3d 1220, 1224 (9th Cir. 2002) ("the enactment of the PACA amendment elevated the claims of unpaid perishable agricultural commodities suppliers over all other creditors of the bankruptcy estate with regard to funds in the PACA trust").

12. Upon the imposition of a PACA Trust, courts construing PACA have consistently held that PACA Trust Assets are not "property of the estate" pursuant to section 541 of the Bankruptcy Code. See In re Long John Silver's Restaurant's, Inc., 230 B.R. 29, 32 (Bankr. D. Del. 1999). Therefore, the distribution of assets to beneficiaries of a PACA statutory trust falls outside of both (i) the priority scheme established by the Bankruptcy Code, and (ii) the plan process (i.e., trust beneficiaries may be paid outside of, and prior to, a confirmed plan of reorganization). Id, The distribution of trust assets to PACA trust beneficiaries, however, remains under the jurisdiction of the bankruptcy court presiding over the relevant bankruptcy case. See, e.g., Allied Growers Co-Op, Inc. v. United Fruit & Produce Co., Inc. (In re United Fruit & Produce Co., Inc.), 86 B.R. 14, 16 (Bankr. D. Conn. 1988).

13. Section 105(a) of the Bankruptcy Code authorizes the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). The purpose of section 105(a) is to assure a bankruptcy court's power to take what-ever action "is appropriate or necessary in aid of exercise of its jurisdiction." 2 COLLIER ON BANKRUPTCY ¶ 105.01, at 105-2 (15th ed. 1994). The relief requested in this Motion is critical to the Debtors' successful reorganization and is justified under section 105(a) of the Bankruptcy Code.

14. The Debtor acknowledges the rights of the trust beneficiaries under their respective statutes, provided that the terms of PACA are complied with. The PACA claimants are for the most part critical suppliers of produce to the Debtor. The Debtor seeks to have this Court authorize a procedure for the filing of all PACA Claims and the payment of those such PACA Claims that the Debtor determines to be valid in its sole discretion, after consultation with the lender under the Debtor's Debtor in Possession credit facility, and the Federal Deposit Insurance Corporation as Receiver for New Frontier Bank (the "Lenders"). Any PACA Claimant who accepts payment from the Debtors on account of its valid PACA Claim will be deemed to have waived any and all claims, of whatever type, kind or priority, against the Debtor, its property and estate, and/or any funds and other property held in trust by the Debtor that do not constitute "property of the estate."

15. Because it is essential that only valid PACA Claims be paid, each PACA Claimant must comply with all requirements under PACA and the regulations promulgated thereunder in order to have a valid claim, and nothing in this Motion is intended to or shall excuse compliance with PACA or the regulations promulgated thereunder. The Debtors request that all PACA Claims be sent to it and its counsel at the following addresses:

    The Debtor
    Pro-Health, LLC
    2100 Luna Road, Suite 140
    Carrolton, TX 75006

    The Debtor's Counsel
    DLA Piper LLP (US)
    1717 Main Street, Suite 4600
    Dallas, TX 75201
    Attn: Vincent P. Slusher and J. Seth Moore

    With a copy to:

WEST\21786559.1

<u>The DIP Lender's Counsel</u>
Billy G. DuPree, Jr.
58 East 1st North,
P.O. Box 723,
Rexburg, Idaho 83440

<u>Attorney for FDIC-R</u>
James T. Markus
Jennifer Salisbury
1700 Lincoln, Suite 4000
Denver, Colorado 80203

PACA claims submitted pursuant to this procedure must be submitted within fifteen days of the entry of the order approving the relief requested herein.

16. The relief requested herein does not constitute the Debtors making payment on account of pre-petition claims, as PACA Claimants would be paid from non-estate property.

17. It is the Debtors' business judgment that prompt satisfaction of valid PACA Claims will best promote the Debtor's rehabilitation and is in the best interests of the Debtor and its customers, creditors and estate.

18. Should this motion be granted, to the extent the Debtors question the validity of all or part of any particular PACA Claim filed pursuant to the foregoing procedure, the Debtor, in an effort to expeditiously resolve any such dispute, will file with this Court, within 10 days of the receipt of any such claim, an objection to such claim and would move this Court to consider the Claim and the Debtor's objection thereto on an expedited basis in accordance with applicable law. To the extent the Debtor determines that PACA claims submitted pursuant to the procedure set forth herein are valid, the Debtor shall file with this Court a Notice of Intent to Pay PACA Claims five business day prior to making any such payment.

19. For all of the foregoing reasons, the Debtors request authority pursuant to sections 105 and 541 of the Bankruptcy Code and PACA to pay, in the Debtors' sole discretion, the undisputed amounts of the PACA Claims.

NOTICE

20. The Debtor has provided notice of this Motion to (i) the Office of the United States Trustee; (ii) the Debtor's twenty largest unsecured creditors; (iii) the FDIC; (iv) the DIP Lender; (v) the official committee of unsecured creditors; (vi) all parties requesting notice; and (vii) the list of other known potential PACA claimants identified on the attached schedule. The Debtor submits that given the circumstances and the notice of the relief requested herein, no other or further notice is required.

No Prior Request

21. No prior request for the relief sought in this Motion has been made to this or any other court.

WHEREFORE, the Debtor respectfully requests that the Court enter an order granting (i) the relief requested herein and (ii) such other and further relief to the Debtor as the Court may deem proper.

Respectfully submitted,

Dated: September 2, 2009
Dallas, Texas

DLA Piper LLP (US)

By: /s/ Vincent P. Slusher
Vincent P. Slusher
State Bar No. 00785480
vince.slusher@dlapiper.com
J. Seth Moore
State Bar No. 24027522
seth.moore@dlapiper.com

1717 Main Street, Suite 4600
Dallas, Texas 75201
Telephone: (214) 743-4572
Facsimile: (972) 813-6267

PROPOSED COUNSEL FOR DEBTOR AND
DEBTOR-IN POSSESSION

WEST\21786559.1

**CERTIFICATE OF SERVICE**

This is to certify that a true and correct copy of the foregoing document has been served this 2nd day of September 2009 to (i) the Office of the United States Trustee; (ii) the Debtor's twenty largest unsecured creditors; (iii) the FDIC; (iv) the DIP Lender; (v) the official committee of unsecured creditors; (vi) all parties requesting notice; and (vii) the list of other known potential PACA claimants identified on the attached schedule by ECF Notification and/or first class United States mail.

                                                  */s/ J. Seth Moore*
                                                  J. Seth Moore

Schoenmann Produce Company
6950 Neuhause St.
Houston, Texas 77061

H.H. Price
1608 South Harwood St.
Dallas, Texas 75215

Gold Ribbon Potato Company
5802 N. Industrial Way Suite C
Pasco, Washington 99302-2625

Global Fresh Import & Export, Inc. d/b/a M&M Marketing Co.
97 Produce Row
St. Louis, MO 63102

McCormick & Meline, LLC
3972 N. Road 3, E.
Monte Vista, CO 81144

WEST\21786559.1