Michael R. Rochelle
State Bar No. 17126700
Scott M. DeWolf
State Bar No. 24009990
Kerry Ann Miller
State Bar No. 24050875
ROCHELLE MCCULLOUGH LLP
325 N. St. Paul, Suite 4500
Dallas, Texas 75201
P: (214) 953-0182
F: (214) 953-0185

**ATTORNEYS FOR THE OFFICIAL
COMMITTEE OF UNSECURED CREDITORS**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **PRO-HEALTH, LLC,** | § | Case No. 09-34484-BJH-11 |
| | § | |
| Debtor. | § | |
| | § | |

### OFFICIAL UNSECURED CREDITORS' COMMITTEE'S OBJECTION TO DISCLOSURE STATEMENT FOR CHAPTER 11 PLAN OF REORGANIZATION FILED BY DEBTOR, PRO-HEALTH LLC, DATED DECEMBER 22, 2009

**TO THE HONORABLE BARBARA J. HOUSER,
CHIEF UNITED STATES BANKRUPTCY JUDGE:**

COMES NOW, The Official Unsecured Creditors' Committee (the "Committee"), of Pro-Health, LLC (the "Debtor"), through its counsel, and for its Objection to Disclosure Statement for Chapter 11 Plan of Reorganization filed by Debtor, Pro-Health, LLC, Dated December 22, 2009 (the "Disclosure Statement") would respectfully state as follows:

**SUMMARY OF OBJECTION**

The Court should not approve the Disclosure Statement on a number of grounds. As currently presented, the Plan is patently unconfirmable on its face, due, among other things, to its violation of the absolute priority rule.

The Committee further objects to the Disclosure Statement because it does not provide creditors with adequate information to make an informed judgment about whether to accept or reject the Debtor's Proposed Plan [Docket No. 213]. Specifically, the Disclosure Statement fails to provide adequate information regarding (i) the Debtor's financial projections and liquidity analysis; (ii) the Debtor's assets; (iii) information relevant to the risks posed to creditors; (iv) the estimated administrative expenses, and (v) the actual or projected realizable value from recovery of preferential or otherwise voidable transfers. As a result, the Disclosure Statement does not satisfy the requirement of Section 1125(b) of the Bankruptcy Code that a disclosure statement contain "adequate information." Accordingly, the Court should not approve the Disclosure Statement.

## I. JURISDICTION

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(a) and 157(a) and (b). This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). (L), and (O). This Court has the authority to grant the requested relief pursuant to 11 U.S.C. §§ 105, 1121 and 1125.

## II. BACKGROUND

2. On July 9, 2009, Pro Health, LLC filed its voluntary petition with the Court pursuant to Chapter 11 of 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code"). On information and belief, the Debtor continues to operate its business and manage its

property as debtors-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108. *See* Docket No. 1.

3. On July 10, 2009, Pro-Health filed its Notice of Designation as a Complex Chapter 11 Bankruptcy Case. *See* Docket No. 8.

4. Pursuant to 11 U.S.C. § 1102(a)(1), the United States Trustee appointed the Committee to act as the official committee of creditors holding unsecured claims in the Pro-Health Bankruptcy Case.

5. On October 19, 2009, the Debtor filed its Motion Pursuant to Section 1121(d) of the Bankruptcy Code Requesting Extension of Exclusive Periods for the Filing of a Chapter 11 Plan and Solicitation of Acceptance Thereto and Report Pursuant to Local Bankruptcy Rule 3016.1, requesting this Court grant Debtor an extension of the exclusive periods for the filing of a chapter 11 plan and solicitation of acceptances thereto through and including January 20, 2010 and March 21, 2010, respectively. *See* Docket No. 170. The Court granted Debtor's request on November 5, 2009. *See* Docket No. 197.

6. On December 22, 2009, the Debtor filed its Disclosure Statement for Chapter 11 Plan of Reorganization, dated December 22, 2009. *See* Docket No. 214.

### III. ARGUMENTS AND AUTHORITIES

**A. THE PROPOSED PLAN IS UNCONFIRMABLE AS IT VIOLATES THE ABSOLUTE PRIORITY RULE**

7. While issues regarding plan confirmation are not considered at the hearing on the Disclosure Statement, "courts generally have agreed that it may, on occasion, be appropriate to consider issues at the disclosure hearing stage which could otherwise be

raised at confirmation, if the described plan is fatally flawed so that confirmation would not be possible." *See In re Phoenix Petroleum Co*., 278 B.R. 385, 395 (Bank. E.D. Pa. 2001); *see also In re Cardinal Congregate I*, 121 B.R. 760, 764 (Bankr. S.D. Ohio 1990) (court should exercise its discretion to refuse to consider the adequacy of disclosures where the plan is so "fatally flawed" that confirmation is "impossible.")

8. The absolute priority rule requires that the holder of an unsecured claim must receive the full amount of its allowed claim unless all junior claims and interests will receive no property and retain no interest under the plan." *See In re Cypresswood Land Partners I*, 409 B.R. 396, 419 (Bankr. S.D. Tex. 2009)(quoting *Mut. Life Ins. Co. of N.Y. v. Patrician St. Joseph Partners Ltd. P'Ship* (*In re Patrician St. Joseph Partners Ltd. P'Ship*), 169 B.R. 669, 682 (Bankr. D. Ariz. 1994).

9. The Disclosure Statement provides that each and every Old Equity Interest shall be cancelled and the holder thereof shall receive equity interests in the Reorganized Debtor equal to such holder's Old Equity Interest." *See* Disclosure Statement, p. 12. The Unsecured Claims (Class 6) are being paid in full with a payment period of two years, in eight equal payments. However, the Disclosure Statement is silent as to whether there is interest included in the amount deemed to be payment in full. If the Old Equity Interests of the Debtor are being given equity interests in the Reorganized Debtor, and the members of Class 6 are not being paid interest on their claim, this is a clear violation of the absolute priority rule.

10. The violation of the absolute priority rule is not only evident with respect to the Unsecured Claims, but is also evident as to other classes of creditors. By way of example, the Disclosure Statement provides that Class 1 (BV Operations Claims) will

receive a note for $8.4 million. *See* Disclosure Statement at page 10. BV Operations has filed a claim in this case for the principal amount of $24,706,546.00. *See* BV Operations Amended Proof of Claim. There is nothing to indicate that BV Operations has indicated that it will accept the Debtor's treatment of its claims under the Plan.[1]

**B. DISCLOSURE STATEMENT STANDARDS**

11. The primary purpose of a disclosure statement is to provide creditors with specific and sufficient information regarding the plan of reorganization to allow creditors to either accept or reject that proposed plan. *See In re Tex. Extrusion Corp.*, 844 F.2d 1142, 1156 (5th Cir. 1988); *In re Dakota Rail, Inc.*, 104 B.R. 138, 142 (Bank. D. Minn. 1989); *In re Miller*, 347 B.R. 48 (Bankr. S.D. Tex. 2006). Whether a disclosure statement contains "adequate information" to allow a creditor to make an informed decision regarding acceptance or rejection of the proposed plan is determined under Section 1125 of the Bankruptcy Code.

12. The term adequate information is defined in Section 1125 Bankruptcy Code as:

> [I]nformation of a kind, and in sufficient detail, as far as it reasonably practicable in light of then nature and history of the debtor and the condition of the debtor's books and records, that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan, but adequate information need not include such information about any other possible or proposed plan.

*See* 11 U.S.C. §1125(a)(1). A disclosure statement must "succinctly inform the average unsecured creditor what it is going to get, when it is going to get it, and what

---

[1] The Committee notes that it is not agreeing that BV Operations' claim is in fact $24,706,546.00 in principal. Rather, the Committee is simply noting that the Debtor cannot propose a Plan in which it impairs all creditors and have existing equity retain their existing rights and be unimpaired without violating the absolute priority rule.

**OFFICIAL UNSECURED CREDITORS' COMMITTEE'S**
**OBJECTION DISCLOSURE STATEMENT FOR CHAPTER**
**11 PLAN OF REORGANIZATION FILED BY DEBTOR**
**PRO HEALTH, LLC DATED DECEMBER 22, 2009**
**Page 5**

contingencies there are to getting its distribution." *See In re Ferretti*, 128 B.R. 16, 19 (Bankr. D.N.H. 1991).

13. There are broad subjective standards used to determine what constitutes adequate information, which permits bankruptcy courts to make case-by-case determination of adequate information based on the facts and circumstances of each case. *See In re Cajun Elec. Power Cooperative, Inc.*, 150 F.3d 503, 518 (5th Cir. 1998); see also In re Tex. Extrusion Corp., 844 F.2d at 1157; *see also In re Ferretti*, 128 B.R. at 18.

14. Case law interpreting Section 1125 of the Bankruptcy Code had produced a list of factors which a plan proponent may need to provide to meet its "adequate information" disclosure obligation. Such factors include:

    (1)  the events which led to the filing of a bankruptcy petition;
    (2)  a description of the available assets and their value;
    (3)  the anticipated future of the company;
    (4)  the source of information stated in the disclosure statement;
    (5)  a disclaimer;
    (6)  the present condition of the debtor while in Chapter 11;
    (7)  the scheduled claims;
    (8)  the estimated return to creditors under a Chapter 7 liquidation;
    (9)  the accounting method utilized to produce financial information and the name of accountants responsible for such information;
    (10) the future management of the debtor;
    (11) the Chapter 11 plan or a summary thereof;
    (12) the estimated administrative expenses, including attorneys' and accountants' fees;
    (13) the collectability of accounts receivable;
    (14) financial information, data, valuations or projections relevant to the creditors' decision to accept or reject the Chapter 11 plan;
    (15) information relevant to the risks posed to creditors under the plan;
    (16) the actual or projected realizable value from recovery of preferential or otherwise voidable transfers;
    (17) litigation likely to arise in a nonbankruptcy context;
    (18) tax attributes of the debtor; and
    (19) the relationship of the debtor with its affiliates.

*See In re U.S. Brass Corp.*, 194 B.R. 420, 424-25 (Bankr. E.D. Tex. 1996). "Disclosure is the 'pivotal' concept of a Chapter 11 reorganization." *See Kunica v. St. Jean Fin. Inc.*, 233 B.R. 46, 54 (S.D.N.Y. 1999)(citing 5 COLLIER ON BANKRUPTCY, ¶ 1125.03 (Lawrence P. King, ed., 15th ed. 1992). A disclosure statement must reveal the risks and financial results to creditors under the terms and provisions of a plan. *See In re Adana Mortgage Bankers, Inc*., 14 B.R. 29, 31 (Bankr. N.D. Ga. 1981).

**C. THE DISCLOSURE STATEMENT FAILS TO PROVIDE ADEQUATE INFORMATION TO ALLOW CREDITORS TO MAKE AN INFORMED DECISION WHETHER TO ACCEPT OR REJECT THE PLAN.**

15. Here, the Debtor has not met its burden under section 1125(b) to provide adequate information. The Disclosure Statement is silent on the following matters: (1) financial information, data or financial projections (2) the Debtor's available assets and their value, (3) a liquidation analysis and the estimated return to creditors under a Chapter 7 liquidation, (4) contract assumption schedule or contract rejection schedules, (5) avoidance actions and their potential recovery, all of which would be relevant to the creditors' decision to accept or reject the Chapter 11 plan. Full and adequate disclosure with respect to these issues is vital for the claimants in each Class under the Plan to allow them to make an informed decision with respect to whether to accept or reject the Debtor's Plan. As a result, the Court should not permit the Debtor to solicit votes for the Plan pursuant to section 1125(b) of the Bankruptcy Code unless and until the Disclosure Statement has been amended to include the required information.[2]

---

[2] The Disclosure Statement has been on file since December 22, 2009 and no supplements have been filed, nor have any of the necessary or referenced exhibits to the Plan been filed. Without the information described above, the Disclosure Statement does not contain adequate information and cannot be approved.

1. **The Disclosure Statement fails to provide any information regarding financial information, data, or financial projections.**

16. The most obvious reason the Disclosure Statement is inadequate is the complete lack of financial information, data or financial projections within the Disclosure Statement.[3] It is impossible for a creditor to determine what is in their best interest when there is no relevant financial information included within the Disclosure Statement. In that regard, this Disclosure Statement is hopelessly inadequate.[4]

17. The Disclosure Statement also refers to an exit financing loan to be provided to the Reorganized Debtor, up to an amount of $5,000,000.00 by Blaine Larsen Farms, which will implement the Plan, as necessary. *See* Disclosure Statement, p. 12. There are no proposed terms for this loan found in the Disclosure Statement, such as estimated necessary amount, interest rate and term. Further, there is no discussion of whether $5,000,000.00 will be sufficient to implement the terms of the Plan. More information must be provided regarding the exit financing loan by Blaine Larsen Farms, including the estimated necessary amount, interest rate and term in order for the creditors to be able to understand, evaluate and make informed decisions with respect to the Plan.

2. **The Disclosure Statement fails to provide adequate information regarding the Debtor's assets and their values.**

18. The Disclosure Statement provides wholly inadequate information regarding the valuation of Debtor's assets. In fact, there is no disclosure whatsoever

---

[3] Although the Disclosure Statement does reference "Financial Projections" attached as Exhibit C to the Disclosure Statement, there was no such Exhibit attached to the Disclosure Statement.

[4] Likewise, as there is no financial information, data or financial projections included in the Disclosure Statement, the Disclosure Statement fails to provide any information regarding the accounting methods used or the names of accountants used to provide the financial information necessary for creditors to make an informed decision on the plan.

**OFFICIAL UNSECURED CREDITORS' COMMITTEE'S**
**OBJECTION DISCLOSURE STATEMENT FOR CHAPTER**
**11 PLAN OF REORGANIZATION FILED BY DEBTOR**
**PRO HEALTH, LLC DATED DECEMBER 22, 2009**
**Page 8**

regarding Debtor's potential assets and their value. Without even a mere listing of what assets the Debtor may possess, creditors are unable to make an informed decision whether to accept or reject this Plan, therefore, this Disclosure Statement entirely inadequate.

> 3. **The Disclosure Statement fails to provide a liquidation analysis and adequate information regarding the potential return to creditors under Chapter 7 liquidation.**

19. "Disclosure statements are required to contain liquidation analysis that enable creditors to make their own judgment as to whether a plan in is in their best interests and to vote and object to a plan if they so desire." *See In re Applegate Prop., Ltd.*, 133 B.R. 827, 831 (Bankr. W.D. Tex. 1991)(quoting *In re Crowthers McCall Pattern, Inc.*, 120 B.R. 279, 300 (Bankr. S.D.N.Y. 1990). The Disclosure Statement merely states that "[t]he Debtor believes that liquidation under chapter 7 would result in smaller distributions being made to Creditors than those provided for in the Plan…" *See* Disclosure Statement, p 29. This blanket statement, however, without more, is insufficient to provide adequate information regarding the return to creditors under a Chapter 7 liquidation. The Disclosure Statement fails to attach or include a liquidation analysis, which would attempt to demonstrate the possible return to creditors under a Chapter 7 liquidation.[5] Without a liquidation analysis, a "hypothetical, reasonable investor" cannot possibly make an informed decision.[6]

---

[5] Although the Disclosure Statement does reference a Liquidation Analysis prepared based upon a hypothetical liquidation in a chapter 7 case, it was not attached as an Exhibit to the Disclosure Statement, and was not contained therein. *See* Disclosure Statement, p. 29.

[6] The requirement of a liquidation analysis is not an onerous requirement. Here, the Debtor has had two financial advisors. The Debtor currently has a financial advisor which certainly could prepare the requisite liquidation analysis. Until a liquidation analysis is provided, the Disclosure Statement cannot be approved.

20. Further, the conclusory opinions regarding potential return to creditors under a Chapter 7 liquidation found in the Disclosure Statement cannot be said to be adequate information. Indeed, section 1125 requires factual predicates for all assertions contained in a disclosure statement, as "opinions without factual support are not proper content of a disclosure statement and do not provide the parties voting on the plan with adequate information." *In re Fireman*, 21 B.R. 314, 315 (Bankr. E.D. Pa. 1982)(citation omitted); *see also Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 362 (3d Cir. 1996). Likewise, the Disclosure Statement fails to provide anything but conclusory opinions relating to the potential for creditor recovery in a Chapter 7 liquidation, therefore, the Disclosure Statement does not have adequate information.

**4. The Disclosure Statement fails to provide adequate information regarding the rejection and assumption of executory contracts.**

21. The Disclosure Statement states that the Debtor intends to reject each and every executory contract and unexpired lease found within the Contract Rejection Schedule. *See* Disclosure Statement, p. 23. However, the Contract Rejection Schedule is not attached to the Disclosure Statement, nor is it included within the Disclosure Statement. Without knowing exactly what contracts will be rejected, a creditor is without sufficient information to accept or reject the Debtor's Plan.

22. Further, the Disclosure Statement states that the Debtor intends to assume each and every executory contract and unexpired lease listed on the Contract Assumption Schedule. *See* Disclosure Statement, p. 24. However, the Contract Assumption Schedule is not attached to the Disclosure Statement, nor is it included within the Disclosure statement. Further, the Debtor has not provided any information regarding the cure

amounts for these contracts, or whether any concessions from the counterparties to the contract were negotiated in exchange for the assumption. Without knowing exactly what contracts will be assumed, a creditor is without sufficient information to accept or reject the Debtor's Plan.

**5. The Disclosure Statement fails to provide adequate information regarding the actual or projected realizable value from recovery of preferential or otherwise voidable transfers.**

23. The Disclosure Statement states that "[t]he Debtor has not conducted a completely analysis of possible causes of action under Sections 547, 548, 549 and 550 of the Bankruptcy Code…All avoidance actions are preserved under the Plan for the benefit of the Debtors' [*sic*] estates [*sic*]." Here, the Disclosure Statement fails to provide any estimate regarding the number of potential avoidance claims and fails to provide any estimate of any potential recoveries. Further, the Disclosure Statement fails to allege if the Reorganized Debtor will be pursuing these potential avoidance actions. Additional information is necessary regarding the potential avoidance actions before there is sufficient disclosure to allow a creditor to make an informed decision.

**D. THE DISCLOSURE STATEMENT FAILS TO DISCLOSE AND ADDRESS A CRITICAL MATTER RELATED TO THE DEBTOR'S PROPOSED PLAN OF REORGANIZATION.**

24. The Debtor holds a license under the perishable agricultural commodities act ("PACA"). Upon information and belief, the Debtor's PACA license expires on August 30, 2010. PACA, in relevant part, provides:

> That the license of any licensee shall terminate upon said licensee, or in the case of the licensee is a partnership, any partner, being discharged as a bankrupt unless the Secretary finds upon examination of the circumstances of such bankruptcy,

> which he shall examine if requested to do so by said licensee, that such circumstances do not warrant such termination.

7 U.S.C. § 499d (a).

25. The United States Department of Agriculture ("USDA") has issued regulations that imply that the confirmation of a plan of reorganization, even if the plan does not provide a discharge, "automatically terminates" a PACA license. *See* USDA "Fair Trading Regulations," attached hereto as Exhibit A. The USDA Regulations further provide that if a firm continues to do business after confirmation, it must be re-licensed and may be subject to posting a surety bond. *See id.*

26. The Committee believes that the circumstances of this Bankruptcy are such that the Secretary should exercise the discretion provided in PACA to not terminate the Debtor's PACA license or require a bond for the post-confirmation debtor. However, the Disclosure Statement does not even contain a discussion of this issue. A disclosure of this issue, along with information regarding the Debtor's communications and discussions with the USDA must be included. In addition, if a bond will be required, the Debtor must disclose how the provision of a surety bond could affect the distributions under the proposed Plan.

27. Moreover, the Plan provides that all of the Debtor's property vests in the "Reorganized Debtor." The Plan further provides that the "Reorganized Debtor" will be a newly formed limited liability company. Under existing PACA regulations, a new PACA license is required. As the regulations, in relevant part, provide:

> A new license is required in case of a change in ownership of a firm, the addition or withdraw of partners in a partnership, or in case business is conducted under a different corporate charter, or in case a limited liability company conducts business under

different articles or organization from those under which the license was originally issued.

7 C.F.R. 46.13(5). The Plan provides no disclosure or discussion regarding the Reorganized Debtor obtaining a new license and whether and to what extent there is a risk such a license cannot be obtained. Given that the Debtor, and any reorganized Debtor succeeding to the Debtor's rights, cannot operate its business without a PACA license, any disclosure statement that does not contain a discussion of this critical issue is patently deficient.

## IV. RESERVATION OF RIGHTS

28. The Committee reserves its rights to amend or supplement this objection, to introduce evidence supporting this objection at any hearing to consider the same, and to seek any alternative or incremental relief. The Committee also fully reserves all of its rights to make any objections to the confirmation of the Plan, whether referred to in this objection or not.

## V. CONCLUSION

29. The Plan violates the absolute priority rule, and is therefore, unconfirmable on its face. Likewise, the Disclosure Statement fails, as a matter of law, to provide creditors, as hypothetical investors under the Plan, sufficient information to allow them to place an informed vote for or against the Plan. As such, it cannot be approved.

WHEREFORE, the Committee respectfully requests that this Court sustain its objections to the Disclosure Statement, and deny approval of the Disclosure Statement. The Official Unsecured Creditors' Committee further prays for all other additional relief to which it may be justly entitled.

Dated: March 12, 2010.

Respectfully submitted,

/s/Scott M. DeWolf
Michael R. Rochelle
State Bar No. 17126700
Scott M. DeWolf
State Bar No. 24009990
Kerry Ann Miller
State Bar No. 24050875
ROCHELLE MCCULLOUGH LLP
325 N. St. Paul, Suite 4500
Dallas, Texas 75201
P: (214) 953-0182
F: (214) 953-0185

**ATTORNEYS FOR THE
OFFICIAL COMMITTEE OF
UNSECURED CREDITORS**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 12th day of March, 2010 she served a copy of this Motion via ECF and/or first-class U.S. Mail, postage prepaid on the Office of the United States Trustee for the Northern District of Texas, the Debtor's twenty (20) largest unsecured creditors; counsel to the Debtor's secured creditors, counsel for BV Operations, LLC, and to all parties who have filed notices of appearance in the above-captioned bankruptcy case.

/s/Kerry Ann Miller
Kerry Ann Miller