

# Summary of Terms and Conditions

Pro Health LLC

January 28, 2010

This summary is not a commitment to lend or an agreement to negotiate a loan commitment. It is an outline for discussion purposes only, and does not contain all of the terms and conditions for the transaction contemplated herein. The actual terms and conditions upon which Lender may extend credit to the Borrowers are subject to further due diligence, satisfactory review and approval of the final documentation, and any other terms and conditions determined by Lender.

**Borrowers**: Pro Health LLC, a Nebraska limited liability company ("Pro Health LLC") and Brandon Larsen ("Brandon Larsen")

**Guarantor**: Blain Larsen ("Blain Larsen")

- Blain Larsen's guarantor liability will be limited to a maximum of $1,500,000.00, plus interest and attorneys' fees and other expenses of enforcement of the Loan Documents and Blain Larsen's guaranty.

**Lender:** Rabo Agrifinance, Inc., a Delaware corporation, or any affiliate

**Additional persons associated with this transaction**: Heather Larsen ("Heather Larsen") and Connie Larsen ("Connie Larsen")

**Real Estate Term Loan:** A term loan in the amount of $13,500,000.00 or 55% of the appraised value of approximately 9,000 irrigated acres located in Dundy County, NE as of the closing date, whichever is less, for the purpose of financing which will refinance term loan at Farm Credit Services of America only.

Interest: The one month LIBOR Rate plus 3.000%, adjusted on the first of each month, or 4.000%, whichever is greater (the "Real Estate Term Loan LIBOR Indexed Rate").

At the end of the initial five year period and the end of each successive five year period, Lender shall have the option to adjust the percentage margin used to calculate the Real Estate Term Loan LIBOR Floating Rate to any percentage margin determined by Lender. Borrowers shall have 30 days following notice of the change to reject the new margin; and if rejected, an additional 90 days to pay the unpaid balance of the facility without prepayment compensation.

Interest on this and all other facilities shall be calculated on the basis of a 360 day year and the actual days elapsed. The use of a 360 day year in the calculation of interest results in more interest than if a 365-day year were used.

Required Payments Prior to Maturity:

- Accrued interest on the first day of each January and July after the closing date to the Real Estate Term Loan Maturity Date.

- Semi-annual payments of principal in an amount calculated to fully amortize the then unpaid principal amount of the Real Estate Term Loan over a term equal to 300 loan months, due on the 1st day of each January and July; provided, however that no payment shall be due until subsequent to the first full payment period.

Maturity: All previously unpaid principal, interest and other charges shall be due on July 1, 2035 (the "Real Estate Term Loan Maturity Date").

|  |  |
|---|---|
|  | <u>Option to Convert to Another Loan Product</u>:  Borrowers shall have a one time option of converting the entire unpaid balance of this facility to another Lender standard amortizing loan product with an initial fixed rate determined by Lender, effective for a period of five years or greater.  This option is subject to there having occurred no event of default, Lender's receipt of not less than 30 days written notice to exercise the option; amendment of the loan documents as required for purposes of the conversion, payment of all accrued interest and other charges (not including principal), payment of Lender's out of pocket expenses; and payment of a conversion fee of not less than 0.500% of the unpaid principal balance of this facility, as determined by Lender. The effective date of the conversion must be on a date when the principal balance of the facility is open to prepayment without prepayment consideration. |
| **Operating Line of Credit:** | A revolving line of credit (committed) in the maximum amount of $6,500,000.00. |
|  | <u>Purpose</u>: Financing Operations and general working capital. |
|  | <u>Availability Period</u>:  Closing Date through the Operating Line of Credit Maturity Date (defined herein). |
|  | <u>Sweep Account</u>:  The Operating Line of Credit will be tied to a sweep account. |
|  | <u>Interest</u>:  The one month LIBOR Rate plus 4.000%, adjusted on the first of each month, or 5.000%, whichever is greater (the "Operating Line of Credit LIBOR Indexed Rate"). |
|  | <u>Required Payments Prior to Maturity</u>:
• Accrued interest on the first day of each month after the closing date to the Operating Line of Credit Maturity Date. |
|  | <u>Voluntary Prepayments</u>:  May be made at any time without prepayment fee or penalty; except that each prepayment must be at least $100.00. |
|  | <u>Maturity</u>:  All previously unpaid principal, interest and other charges shall be due on March 1, 2011 (the "Operating Line of Credit Maturity Date"). |
| **Collateral:** | <u>Collateral Set No. 1</u>:  A first lien and security interest in and to the following, for purposes of securing this transaction; all other existing and future obligations of Borrower to Lender, if any and all other existing and future obligations of Borrower to Rabobank International, if any:
• Fee simple interest in ~ 9000 irrigated acres, located in Dundy County, Nebraska (the "Land Parcel 1")
• Landlord's interest in any tenant lease of the Land Parcel 1, including, without limitation that certain lease or those certain leases of all or a portion of the Land Parcel 1 to TBD.
• All fixtures and personal property directly associated with or used in connection with the Land Parcel 1, including, without limitation:
  - All water, water courses and water rights of whatever kind or character used or useful in connection with the Land Parcel 1.

<u>Collateral Set No. 2</u>:  A first lien and security interest in and to the following, for purposes of securing this transaction; all other existing and future obligations of Borrower to Lender, if any and all other existing and future obligations of Borrower to Rabobank International, if any:
• All interests of Pro Health LLC and Brandon Larsen in all accounts, contract rights, documents, documents of title, payment intangibles, investment property, chattel paper, and instruments. |

- All crops, supplies used or produced in the farming operation of Pro Health LLC and Brandon Larsen with respect to those crops, and products of those crops in their unmanufactured state.

- All interests of Pro Health LLC and Brandon Larsen in all general intangibles, including all intellectual property.

- All interests of Pro Health LLC and Brandon Larsen in all inventory.

- All interests of Pro Health LLC and Brandon Larsen in deposit accounts, including account #'s tbd at Rabobank, N.A..

The collateral granted by Pro Health LLC and Brandon Larsen shall also secure future advances and other obligations of Borrower to Lender and/or Rabobank International.

**Conditions Precedent**: Customary for transactions of this type, as determined by Lender including, but not limited to: (a) final credit approval; (b) completion of transaction documents acceptable to Lender; (c) evidence of the formation and existence of all parties other than Lender which are anything other than a natural person, if any, and authorization of the individuals executing the transaction documents on behalf of those parties (including, (i) in the case of a trust, at Lender's option, a copy of the trust agreement, a certification by the trustees, an opinion of counsel to the trustees as required by Lender, and such other additional documents or agreements required by Lender; and (ii) in the case of a person signing under power of attorney, a copy of the power, an opinion of counsel to the person signing as required by Lender, and such other additional documents or agreements required by Lender); (d) satisfactory review of all required appraisals and inspection reports; (e) compliance in all material respects with all environmental, health and safety statutes and regulations; (f) no material adverse change in business, properties, financial condition or results of operations; (g) no material change in management or ownership structure; (h) no litigation or other proceeding that would materially affect the parties other than Lender or this financing; (i) all required regulatory approvals, permits and licenses have been received; (j) evidence of insurance acceptable to Lender; (k) Lender's confirmation that the real estate collateral includes rights of access, includes water adequate for its intended uses, and is not subject to any easements, covenants or restrictions which are unacceptable to Lender; (l) if any real estate collateral is in a flood zone, adequate flood insurance coverage on the structural improvements located thereon; (m) all representations and warranties are true and correct; (n) the receipt by the Lender of all fees and expenses required to be paid prior to the closing date; and (o) such other documents, information and other preconditions as Lender may require. Without limitation of the foregoing, Lender shall receive:

- An appraisal of approximately 9000 irrigated acres located in Dundy County NE acceptable to Lender, indicating a fair market value of not less than $24,550,000.00

- Lender's policy of title insurance and endorsements covering the real estate collateral.

- Environmental questionnaires completed by the Borrowers, owner of the real estate collateral, if different, and the Relationship Manager or another Lender representative inspecting the collateral, each in a form approved by Lender.

- With respect to the lease(s) of the fee real estate collateral located in Dundy County, Nebraska, to TBD, a tenant subordination agreement with respect to the lease(s), in form and substance satisfactory to Lender.

- Inspection of the collateral by Lender.

- Opinion of counsel to the Borrowers and Guarantor acceptable to Lender.

- Evidence of dismissal of bankruptcy satisfactory to Lender.

| | |
|---|---|
| **Reporting Requirements**: | The loan documents will contain reporting requirements which are customary for this type of transaction, including, without limitation: |

- As soon as available, but no later than 90 days after the end of each fiscal year, a copy of CPA Audited annual financial statements of Pro Health LLC for that period.

- As soon as available, but no later than 30 days after the end of each fiscal quarter, a copy of CPA Compiled quarterly financial statements of Pro Health LLC for that period.

- As soon as available, but no later than 90 days after the end of each fiscal year, a copy of Self Prepared annual financial statements of Brandon Larsen for that period.

- As soon as available, but no later than 30 days after filing, copies of federal income tax returns filed by Borrower, and, if requested by Lender, copies of any extensions of the filing date.

- Consolidated cash flow for upcoming operating cycle due 30 days prior to Operating Line of Credit (RLOC) renewal.

| | |
|---|---|
| **Other Covenants**: | Customary for transactions of this type, as determined by Lender. |

- Any sale or encumbrance of the real estate collateral shall be an event of default.

- Financial covenants for the operating line of credit (RLOC) including current ratio and capital expenditures to be determined by lender.

- Advances for the operating line of credit (RLOC) will be governed by an approved crop budget or monthly borrowing base as determined by lender.

- Prepayments: Payment of all or a portion of the unpaid principal balance prior to the date due (a "Prepayment") is subject to the following:

- The Real Estate Term Loan may be Prepaid at any time if accompanied by payment of the Prepayment Fee.

- Each prepayment must be at least $100.00.

- Notwithstanding the foregoing, during each year, Borrower may prepay up to 10% of the original principal amount of the Real Estate Term Loan without prepayment fee or penalty. Prepayments of the Real Estate Term Loan which during any year exceed, in the aggregate 10% of the original principal amount of the Real Estate Term Loan ("Real Estate Term Loan Excess Payments") must be accompanied by payment of the Prepayment Fee.

- The "Prepayment Fee" shall be calculated as follows: during the first Prepayment Fee Period the Prepayment Fee shall equal 5.00% (the "Prepayment Fee Percentage") of the prepayment. On the first day of each Subsequent Prepayment Fee Period, the Prepayment Fee Percentage shall decrease 1.00%. The "First Prepayment Fee Period" means the first 12 Loan Month (defined herein) period following the Closing Date, and "Subsequent Prepayment Fee Period" means each successive 12 Loan Month (defined herein) period following the First Prepayment Fee Period.

- During the 30 day period immediately prior to the Real Estate Term Loan Maturity Date, Borrower may prepay the entire unpaid balance of the Real Estate Term Loan in full, without prepayment fee or penalty.

| | |
|---|---|
| **Defaults:** | The loan documents will specify events of default which are customary for this type of transaction. Without limitation: |

- A default under any other indebtedness, liabilities or obligations of Borrower to Lender.

| | |
|---|---|
| | The default rate for all interest and other amounts due under the loan documents will be 5% in excess of the otherwise applicable rate of interest. |
| **Closing:** | The closing will occur upon execution of the definitive documentation containing the terms and conditions governing the transaction and satisfaction of all conditions precedent. |
| | Interest will begin to accrue on the date of any advance of the principal amount of the Loans, even if prior to the date of the closing. |
| **Target Closing Date**: | March, 2010  (to meet customer's expectations) |
| | Lender makes no representation or warranty that the transaction will close, or that the actual closing date will be on or before the target closing date; and will not be responsible for any loss or damage suffered due to a delay in closing this transaction for any reason or if this transaction shall never close. |
| **Fees and Expenses**: | At the time of Borrower's submission of a loan application, Borrower shall pay (a) an application fee (the "Application Fee") of $25,000 which shall be deemed earned and non-refundable upon Lender's receipt of the application and (b) a good faith deposit of $25,000 (the "Good Faith Deposit"). The Good Faith Deposit (minus any unpaid fees, expenses or other sums due Lender, if any) will be returned if Lender declines to enter into a loan commitment.  If Lender issues a loan commitment, (a) the Good Faith Deposit, without interest (and minus any unpaid fees, expenses or other sums due Lender, if any), shall be returned upon the Closing (or credited toward the closing fee); and (b) if this transaction does not close, the Good Faith Deposit shall be retained by Lender as stipulated and liquidated damages. |
| | At Closing, Borrower shall pay to Lender the following: (i)  a $75,000 loan fee (the "Loan Fee"), part of which may be offset by the conversion of the Good Faith Deposit; (ii) Lender's out of pocket appraisal expenses; and (iii) Lender's other expenses in connection with the underwriting, documentation, and closing of the transaction. |
| **Governing Law:** | The Loan Documents shall be governed by the laws of the State of Nebraska. |

**ACKNOWLEDGEMENT**

The undersigned on behalf of all Borrowers, acknowledges receipt of the foregoing proposed basic terms and conditions as of the date indicated below.

Date: _____            _____

                                                                 Print Name: _____